```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA
```

JEFFERY CHRISTIAN,              )
                                )
            Plaintiff,           )
                                )
v.                              )      Case No. CIV-16-140-RAW-KEW
                                )
NANCY A. BERRYHILL, Acting      )
Commissioner of Social          )
Security Administration,        )
                                )
            Defendant.          )

## REPORT AND RECOMMENDATION

Plaintiff Jeffery Christian (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was born on November 25, 1963 and was 50 years old at the time of the ALJ's decision. Claimant completed his high school. Claimant has worked in the past as a hydrostatic tester. Claimant alleges an inability to work beginning January 1, 2010 due to limitations resulting from back and hip pain, tremors and shakes, and vision problems.

## Procedural History

On December 18, 2012, Claimant protectively filed for

disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On September 8, 2014, Administrative Law Judge ("ALJ") Lantz McClain, conducted an administrative hearing by video with Claimant appearing in Muskogee, Oklahoma and the ALJ presiding from Tulsa, Oklahoma. On November 21, 2014, the ALJ issued an unfavorable decision. On February 12, 2016, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the RFC to perform his past relevant work.

### Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to perform a proper evaluation at steps four and five; (2) failng to properly consider the medical source evidence; and (3) failing to perform a proper credibility determination.

### Step Four and Five Analysis

In his decision, the ALJ determined Claimant suffered from the

4

severe impairments of a history of back pain, tremors, and obesity. (Tr. 14). The ALJ concluded that Claimant retained the RFC to perform his past relevant work as a hydrostatic tester, which he classified as light, semi-skilled work. (Tr. 18). He also found at step five that Claimant could perform a full range of light work. He determined Claimant could occasionally lift and/or carry 20 pounds, frequently lift and/or carry ten pounds, stand and/or walk at least six hours in an eight hour workday and sit at least six hours in an eight hour workday. (Tr. 15).

After consulting with a vocational expert, the ALJ first determined Claimant could perform his past relevant work. He also found Claimant could perform the representative jobs of small products assembler and poultry processor, both of which were found to exist in sufficient numbers in both the regional and national economies. (Tr. 19). As a result, the ALJ found Claimant was not disabled from January 1, 2010 through the date of the decision. (Tr. 20).

Claimant first contends that the ALJ should have included limitations on stooping, reaching, handling or fingering, and for poor vision in his hypothetical questioning of the vocational expert. The ALJ recognized the consultative examination by Dr. Gregory Root on February 15, 2013. Dr. Root found Claimant to have decreased range of motion in the hips bilaterally but was further

5

restricted on the right. He also noted some decreased range of motion in the back, finding Claimant was slow to perform movements secondary to back pain. Claimant's gait was stable with normal speed and stability with no limp or necessity for an assistive device to walk. Heel/toe walking was equal bilaterally and spinal range of motion was without defect. Straight leg raising was negative in the sitting and supine positions. Claimant's thumb/finger opposition was normal. Grip strength was slightly decreased bilaterally with normal great toe strength equal bilaterally and rated 5/5. Dr. Root noted a resting tremor of the upper extremity bilaterally that worsens with movement. (Tr. 276).

On his Hand/Wrist Sheet, Dr. Root concluded Claimant could effectively oppose the thumb to the fingertips, could manipulate small objects, and could effectively grasp tools such as a hammer. Dr. Root did note on the latter finding that Claimant's strength was somewhat decreased. (Tr. 280).

Claimant also underwent a vision examination by Dr. Alison Hansen on July 11, 2013. Dr. Hansen found Claimant was able to navigate without help with vision in the right eye of 20/80 and left eye of 20/100 without glasses correctable to 20/20 in each eye. (Tr. 288).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis

6

despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012).

Claimant mistakenly contends the ALJ found his hip and back pain to be a severe impairment. In truth, the ALJ found a history of back pain which did not translate into a significant current restriction in back movement. Moreover, while Claimant argues in his reply that the ALJ found his vision condition to be a severe impairment, he actually determined the condition to be non-severe.

7

(Tr. 14). Not only was the condition non-severe but it was correctable with free options for vision correction available to Claimant. Neither of these conditions warranted further restriction in the RFC.

Claimant's tremors were found to be medically present. The restrictions the condition imposes, however, is limited as Dr. Root observed when he found Claimant could manipulate objects and grasp objects. As a result, this Court finds that the ALJ was not required to include additional restrictions in his RFC assessment as a result of these conditions.

Claimant next challenges the ALJ's findings at step four in employing the required phased analysis under Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). In analyzing Claimant's ability to engage in her past work, the ALJ must assess three phases. In the first phase, the ALJ must first determine the claimant's RFC. Id. This Court has found no error in the ALJ's RFC assessment.

In the second phase, the ALJ must determine the demands of the claimant's past relevant work. Id. In making this determination, the ALJ may rely upon the testimony of the vocational expert. Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003). The expert testified that Claimant's hydrostatic tester job as light, heavy as performed with an SVP of 4 under the *Dictionary of Occupational*

*Titles ("DOT")*. (Tr. 42). This inquiry satisfied the requirements in the second phase. Claimant contends this job required the ability to reach, handle, and finger frequently, and occasionally have near vision. Nothing in the objective medical record indicates these activities are restricted except Claimant will require vision correction.

The third and final phase requires an analysis as to whether the claimant has the ability to meet the job demands found in phase two despite the limitations found in phase one. Winfrey, 92 F.3d at 1023. The vocational expert testified that someone with Claimant's RFC could perform the hydrostatic tester job. (Tr. 43). The ALJ relied upon this testimony to arrive at his conclusions at step four. (Tr. 18). This Court finds no error in the ALJ's assessment at step four.

### Consideration of the Medical Source Opinion Evidence

Claimant contends the ALJ relied upon a non-qualified expert medical source to arrive at the RFC. Specifically, Claimant states that "[t]he ALJ failed to explain how he could give a specialist in the diseases of the female pelvis great weight regarding Claimant's RFC." The ALJ must evaluate every medical opinion in the record, and he will consider several factors in deciding the weight that should be given to any medical opinion. Salazar v. Barnhart, 468

F.3d 615, 625-626 (10th Cir. 2006)(citing 20 C.F.R. § 416.927(d)). In evaluating medical opinions, the ALJ must accord each opinion the proper weight on the basis of: (1) the examining relationship; (2) the treatment relationship; (3) the length of the treatment relationship and the frequency of examinations; (4) the nature and extent of the treatment relationship; (5) how well the opinion is supported; (6) its consistency with other evidence; and (7) whether the opinion is from a specialist. Id. at 626. *See also* Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ must give good reasons for the weight assigned to a medical opinion and set forth specific, legitimate reasons for rejecting an opinion of an acceptable treating source. Watkins, 350 F.3d at 1300-1301. As noted, the fact a medical source is a specialist is but one factor in the evaluation of the opinion evidence and certainly does not disqualify an opinion simply because it is from a physician who normally specializes in gynecology. The ALJ also gave great weight to the other agency physicians who rendered opinions. A glaring omission from Claimant's analysis is a reference to any medical opinion evidence which indicates Claimant is as restricted in his ability to engage in basic work activity as urged by Claimant. This Court finds no error in the ALJ's assessment of the opinion evidence.

Claimant also contends he was deprived of due process because one agency physician was only referenced by his initials in the reports. (Tr. 86-87). This circumstance, however, existed at the time of the administrative hearing and Claimant's attorney stated he had no objection to the exhibits. (Tr. 27-28, 44-45). This belies Claimant's due process argument. Glass v. Shalala, 43 F.3d 1392, 1396-97 (10th Cir. 1994).

### Credibility Determination

Claimant asserts the ALJ failed to properly consider his subjective claims of limitation. Claimant's arguments reiterate the inclusion of his back, tremor, and vision conditions in the RFC. The ALJ outlined the contradictory evidence of Claimant's conditions and their limiting effects in the decision. (Tr. 16-17). It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or

other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ relied upon appropriate factors in evaluating the credibility of Claimant's statements. The nature of Claimant's treatment, the objective medical testing, and the inconsistencies between the claimed restrictions and Claimant's activities all form specific and legitimate reasons for the ALJ's questioning of Claimant's credibility.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration

should be **AFFIRMED**.  The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 10th day of May, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE